AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>White iPhone 16 Cellular Phone<br>Case Number:  SYS-24-11-0838<br>("Target Device") | )<br>)<br>)<br>)<br>)<br>)    Case No.  24-mj-04319-AHG |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1546 / 18 USC (2)(b) | False Personation in Immigration Matter / Aiding and Abetting |
| 18 U.S.C. sec. 1028(A)(a)(1) | Aggravated Identity Theft |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Mario Valdes, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mario Valdes-Vazquez,US Customs and Border Protection
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:  _____ 11/18/2024 _____

_____
*Judge's signature*

City and state:  San Diego, California    Hon. Allison H. GODDARD , U.S. Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A

2

### PROPERTY TO BE SEARCHED

3

4   The following property is to be searched:

5              White iPhone 16 Cellular Phone

6              Case Number:  SYS-24-11-0838

7                 ("**Target Device**")

8   **Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

9

10

11

12

13

14

15

16

17

18

19

20

21

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of November 2, 2024, up to and including November 16, 2024:

a.    tending to indicate efforts to bring in smuggled aliens from Mexico into the United States and within the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the bringing of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in the bringing in of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the bringing in of smuggled aliens, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above, which are evidence of violations of Title 8, United States Code, Section 1324.

**<u>AFFIDAVIT</u>**

I, Mario Valdes-Vazquez, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.    I submit this affidavit in support of an application for warrant to search the following electronic device:

White iPhone 16 Cellular Phone

Case Number:  SYS-24-11-0838

**("Target Device")**

the ("Target Device"), as further described in Attachment A and to seize evidence of crime, specifically, violations of Title 18, United States Code, Section 1546 (False Personation in Immigration Matters), Title 18 United States Code, Section 2(b) (Aiding and Abetting) and Title 18, United States Code, Section 1028 (Aggravated Identity Theft), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Edward VILLA-Lopez for Aiding and Abetting Illegal Aliens to enter the United States.  The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents.  This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter.   Dates and times are approximate.

1

**TRAINING AND EXPERIENCE**

4.    I have been employed by U.S. Customs and Border Protection since 2005 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.    My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.    During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.    Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal

1   activities.  Because they are mobile, the use of cellular telephones permits alien smugglers

2   and transporters to easily carry out various tasks related to their smuggling activities,

3   including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

    providing instructions to transporters, guiding aliens to specific pick up locations, warning

4   accomplices about law enforcement activity in the area and the status of check-point

5   operations, and communicating with co-conspirators who guide aliens, coordinate drop off

    locations, and/or operate alien stash houses.

6        8.    The smuggling of aliens generates many types of evidence, including, but not

7   limited to, cellular phone-related evidence such as voicemail messages referring to the

8   arrangements of travel, names, photographs, text messaging (via SMS or other

    applications), and phone numbers of co-conspirators and illegal aliens.  For example,

9   drivers and passengers responsible for transporting illegal aliens are typically in telephonic

10  contact with co-conspirators immediately prior to and/or following the crossing of the

11  illegal aliens at the border, at which time they receive instructions, including where to pick-

    up the illegal aliens for transportation into the United States and where to take the illegal

12  aliens after crossing into the United States.  These communications may also include

13  locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in

14  telephonic contact with co-conspirators prior to and following their crossing in order to

    make smuggling arrangements, receive instructions, and report their locations after

15  crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to

16  months in advance of an event to recruit drivers and to coordinate the event. It is also

17  common for co-conspirators to continue to contact each other by phone calls, social media,

    or messaging applications when contact is lost with the driver after an apprehension has

18  occurred.

19

20                                              3

21

9.    Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.    tending to indicate efforts to transport aliens from Mexico into the United States and within the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of smuggled aliens;

c.    tending to identify co-conspirators, criminal associates, or others involved in the transportation of smuggled aliens;

d.    tending to identify travel to or presence at locations involved in the transportation of smuggled aliens, such as stash houses, load houses, or delivery points;

4

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.   On November 16, 2024, at approximately 1:43 A.M., Edward VILLA-Lopez (Defendant) applied for entry into the United States from Mexico at the Otay Mesa, California Port of Entry through vehicle primary lane 8 as the driver of a gray Ford Focus Hatchback bearing Oregon license plates. Defendant was accompanied by two adult females, and two minor children, one who was later identified as K.E.N. Upon inspection before a United States Customs and Border Protection (CBP) Officer, Defendant presented an Oregon driver's license as his entry document, two U.S. Passports for the two adult females and two U.S. Birth Certificates for the minors. Defendant presented U.S. birth certificate bearing the name E.V.L. on behalf of K.E.N. Defendant stated they were going to Salem, Oregon and had nothing to declare from Mexico. The CBP Officer noticed that the mother listed on the birth certificate for E.V.L. was not present in the vehicle and asked Defendant his relationship to E.V.L. Defendant stated E.V.L. was his nephew. The CBP Officer asked Defendant for supporting documents or pictures, but Defendant was unable to produce anything. The CBP Officer referred the vehicle and its occupants to secondary for further inspection.

12.   In vehicle secondary, a CBP Officer requested that Defendant call his sister who was listed on the birth certificate as the mother of E.V.L. The CBP Officer spoke with

the female that answered the phone. The female stated she was E.V.L.'s mother but was unable to verify the date of birth listed on E.V.L.'s birth certificate. Defendant subsequently admitted the birth certificate did not belong to K.E.N. and he was attempting to smuggle him into the U.S. to reunite him with his mother. Defendant was placed in hand cuffs and escorted to the security office for further processing.

13.    In the security office, K.E.N.'s identity was ascertained, and he was later determined to be a citizen of Mexico without documents to enter, pass through or remain in the United States.

14.    At approximately 8:25 A.M., during a video recorded interview, Defendant was advised of his Miranda rights and elected to make a statement. Defendant admitted knowledge of the smuggling event. Defendant stated K.E.N.'s mother asked him to smuggle K.E.N. into the U.S. Defendant stated he was the only person in the vehicle that knew of the smuggling attempt.

15.    At approximately 1:27 P.M. K.E.N.'s mother was contacted by phone. K.E.N.'s mother stated Defendant was going to take her son to her in Salem, Oregon and she was going to give Defendant $1000 USD for doing her the favor of crossing her son into the United States. The mother provided the minor's Mexican Birth Certificate showing he was born in Guerrero, Mexico. The minor's mother stated the minor did not have any legal documents to enter, pass through or reside in the United States. The mother stated the smuggler's name was Eduardo.

16.    The **Target Device** was found during an inventory of Defendant's personal effects; Defendant claimed ownership of the **Target Device** and used it to make a personal phone call. The **Target Device** was subsequently seized and is now being held as evidence by Customs and Border Protection.

17.    Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and

6

opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on November 2, 2024, up to and including November 16, 2024.

## METHODOLOGY

18.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the

7

network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.    Law enforcement has not attempted to extract data from the **Target Device**. Law enforcement is now seeking to obtain the evidence in the **Target Device** through this warrant.

**CONCLUSION**

22.     Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324(a)(2)(B)(ii).  Accordingly, I request that the Court issue warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____

Mario Valdes-Vazquez, CBP Enforcement Officer

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 18ᵗʰ day of November, 2024.

_____

HON. Allison H. GODDARD
United States Magistrate Judge

9